J. Irwin Shapiro, J.
The defendant, a person over 18 years of age, was found guilty of murder in the first degree and the court not being satisfied “ that the sentence of death is not warranted because of substantial mitigating circumstances ” (Penal Law, § 1045, subd. 3) conducted “ a proceeding to determine whether defendant should be sentenced to life imprisonment or to death ” — “ before the court sitting with the jury that found defendant guilty” (Penal Law, § 1045-a, subd. 2).
*506 The jury after being charged by the court on all ‘ ‘ matters appropriate in the circumstances, including the law relating to the possible release on parole of a person sentenced to life imprisonment” (Penal Law, § 1045-a, subd. 4) retired “to consider the penalty to be imposed ” and by unanimous agreement decided “on the imposition of the penalty of death” (subd. 5), Pursuant to the last-named subdivision of section 1045-a it thereupon became the duty and obligation of the court “ to impose the sentence of death”. Before the imposition of the sentence the defendant made a motion to set aside the verdict of the jury upon various grounds including the fact that the court would not permit in evidence at the second stage of the trial,— “the proceeding to determine whether defendant should be sentenced to life imprisonment or to death ’ ’ the testimony of two psychiatrists who were called by the defense to testify solely * ‘ on the question of sanity and insanity ’ ’.
In excluding the proffered testimony of the two psychiatrists the court said — “ I will not permit now the introduction of any such testimony. It would make a farce of the law to hold that upon the trial proper in the first stage insanity meant one thing, and upon the question of punishment it meant another thing. This jury has now determined that for all legal purposes this defendant is not insane within the meaning of the law. I will not permit that issue to be relitigated. If that is the sole purpose for which Dr. Diamond is called, you may have an exception to the proffer of testimony with the same force and effect as if the doctor were called and you asked bim specific questions bearing upon that issue ”.
In connection with that ruling and in excluding the proffered testimony I pointed out that the relevant statute (Penal Law, § 1045-a, subd. 3) provides that in the sentencing proceeding “ evidence may be presented by either party on any matter relevant to sentence including, but not limited to, the nature and circumstances of the crime, defendant’s background and history, and any aggravating or mitigating circumstances ” and that ‘1 Any relevant evidence, not legally privileged, shall be received regardless of its admissibility under the exclusionary rules of evidence ’ ’ but I then concluded that in this case ‘‘ we have heard the defendant’s background and history on the witness stand through him and through the members of his family. We have heard the circumstances of the crime during the trial proper, and we are now going into any aggravating or mitigating circumstances. The District Attorney has introduced proof to show what he considers to be aggravating circum *507 stances. You are permitted to introduce any proof showing mitigating circumstances. The defendant’s mental condition is not before us now; that’s already been passed upon by the jury”.
Sections 1045 and 1045-a of the Penal Law became effective on July 1, 1963 and there has been no appellate interpretation of the meaning of the new provisions found therein.
I realize that subdivision 3 of section 1045-a which provides for the admission of testimony 11 on any matter relevant to sentence including, but not limited to, the nature and circumstances of the crime, defendant’s background and history, and any aggravating or mitigating circumstances ” is indeed broad and should be most liberally construed. However, in this case the defendant had not only pleaded not guilty, but not guilty by reason of insanity, and the whole trial essentially developed into a question of the defendant’s condition of mind. The jury in finding the defendant guilty of the crime of murder in the first degree necessarily rejected the defense of “ not guilty by reason of insanity”. In this jurisdiction, as well as in the majority of American jurisdictions, the old and familiar rule known as the M’NagMen rule prevails, and while the validity of this standard of measurement of a person’s sanity has frequently been challenged it has been consistently sustained as a valid criterion to be used in judging a defendant’s guilt on a criminal charge.
The M’NagMen rule is embodied by statute in section 1120 of our Penal Law and this statutory provision, as well as that of section 34 of the Penal Law, bind the New York courts to the criteria of criminal responsibility declared in the M’Naghten’s case in 1843. (10 Cl. & P. 200.)
As the great and late Caedozo, J., said in People v. Schmidt (216 N. Y. 324, 339) 1 ‘ Whatever the views of alienists and jurists may be, the test in this state is prescribed by statute, and there can be no other ”. Again in People v. Horton (308 N. Y. 1, 73) the court pointed out that if there is reason for dissatisfaction with the present state of the law on the question of insanity as defense in a criminal case the argument for revision must be addressed to the Legislature and not to the courts.
In the proposed New York Penal Law drafted and recommended by the Temporary State Commission on Revision of The Penal Law and Criminal Code, introduced in the 1964 Legislature for purposes of study as Senate Introductory No. 3918, Assembly Introdutory No. 5376, there is found a proposed revision of sections 34 and 1120 of the Penal Law, but unless and until some change is made in the present statute the rigid *508 form in which the statute fastens itself upon the M’Naghten rule must be applied.
Limiting the determination necessitated by the defendant’s motion solely to the facts of this case it would seem that the proffered testimony of the psychiatrists was properly excluded. The defendant’s “ background and history ” (§ 1045-a, subd. 3) had been fully gone into upon the trial proper and the psychiatrists had been given full scope in testifying as to the defendant’s mental condition. To hold that the same jury which was told in the charge of the court that the M’Naghten rule was applicable here, although of course in language understandable to a jury, must be told, upon the sentencing hearing, that another and different test of insanity is to be applied would seem to me to make the law look ridiculous.
A different question might arise if the testimony of psychiatrists, or other testimony bearing upon the defendant’s mental condition and background, were offered as mitigating circumstances, where that very issue had not been litigated at the trial proper, but under the circumstances of this case I do not see that evidence with respect to the defendant’s alleged mental condition should be received at the second stage of the trial.
I realized at the time of the exclusion of the testimony, as I do now, that my ruling presents a substantial question of law, but I felt that the People were entitled to the benefit of the doubt on that question of law (People v. Reed, 276 N. Y. 5) because a ruling in favor of the defendant on this issue could not be the subject matter of review on appeal.
In this connection it should be pointed out that subdivision 6 of section 1045-a provides that ‘ ‘ On an appeal by the defendant where the judgment is of death, the court of appeals, if it finds substantial error only in the sentencing proceeding, may set aside the sentence of death and remand the case to the trial court, in which event the trial court shall impose the sentence of life imprisonment”. The same provision is carried forward in the proposed draft of the Penal Law above mentioned. Whatever the purpose of subdivision 6 is, it should be noted that if the Court of Appeals reverses the sentence because of “substantial error only in the sentencing proceeding” the defendant automatically must receive a sentence of life imprisonment. Under such circumstances he no longer faces a sentence of death. It would seem that so long as the law retains the provision for the imposition of a death sentence, the error of a trial court in the sentencing procedure should not relieve the defendant of the necessity of being retried on the question of what sentence should be imposed and that he should not automatically receive *509 the benefit of a sentence of life imprisonment, vis-a-vis against the death sentence.
In view of all of the foregoing the motion of the defendant to set aside the unanimous agreement on the imposition of the death penalty by the jury is denied with an exception to the defendant.