Breitel, J.
Defendant has been found guilty of murder in the first degree after a jury trial in Supreme Court, Queens County. Pursuant to section 1045-a of the Penal Law, a separate proceeding was thereafter held before the same jury to determine whether defendant should be sentenced to life imprisonment or death. The jury recommended the death penalty and this sentence was imposed by the trial court on July 6, 1964. A direct appeal to this court was taken under section 517 (subd. 1) of the Code of Criminal Procedure.
Defendant is accused of killing, robbing, and attempting to rape Katherine Genovese in the early morning of March 13, 1964. While defendant pleaded “ not guilty ” and “ not guilty by reason of insanity ’ ’, his only defense at trial was insanity and no attempt was made to dispute his commission of the crime. At the time of arrest, he had confessed in full to the killing and entered no objection to the introduction of this confession at trial. Defendant also took the stand and repeated his admissions in detail. On this appeal, he argues that the trial court, which gave the traditional ‘ ‘ right-wrong ’ ’ charge to the jury on the issue of defendant’s insanity (Penal Law, § 1120), should have instructed the jury that the statutory phrase “ to know ” that the act “ was wrong ” means “ ‘ to know in depth ’ *67 so as to be capable of logically or rationally directing one’s actions or activities Alternatively, defendant contends that the trial court erred when it refused to admit medical testimony on defendant’s mental condition at the section 1045-a (sentencing) proceeding. This testimony was offered in mitigation of the defendant’s offense but the trial court excluded it on the ground that the jury had already found defendant to be legally sane and that, therefore, “ that issue [could not] be relitigated The trial court also wrote a memorandum opinion on this point (43 Misc 2d 505).
With respect to the issue of defendant’s sanity, it is concluded that under section 1120 and the applicable precedents, the jury was properly charged and the People proved beyond a reasonable doubt that defendant knew it was wrong to kill Katherine Genovese. The trial court, however, committed substantial error in holding that evidence as to defendant’s mental condition was inadmissible at the sentencing hearing. Defendant was not attempting to relitigate the issue of his legal insanity or his criminal responsibility; instead he was quite properly endeavoring to persuade the jury that, while ‘ ‘ legally sane ’ ’, his mental illness, while not a defense to the crime, may have rendered it impossible for him to exercise any self-control, and should, therefore, be considered in mitigation. The matter should be remanded to the trial court which must then impose the sentence of life imprisonment upon defendant (Penal Law, § 1045-a, subd. 6).
After the jury returned a verdict of murder in the first degree the sentencing phase of the trial was held four days later. At that time, the People introduced evidence of “ aggravating * * * circumstances ” through the testimony of five women. Four of the women identified defendant as the man who had either assaulted, sodomized, robbed, raped, or attempted to rape them. A fifth witness corroborated certain details of a murder to which defendant had confessed at the first phase of the trial.
Counsel for defendant then indicated that they wished to recall two of the psychiatrists to testify in mitigation of the sentence, particularly on the point that, for the purposes of fixing the penalty, the jury should be informed that there is a distinction between “legal insanity ” (as defined by § 1120) and “ medical *68 insanity ’ The trial court held that it would not permit such testimony: “ It would make a farce of the law to hold that upon the trial proper in the first stage, insanity meant one thing, and upon the question of punishment it meant something else. This Court — this jury has determined that for all legal purposes, all legal purposes, this defendant is not insane within the meaning of the law. I will not permit that issue to be relitigated.” The defendant took an exception and rested without producing any evidence. During summation, defendant’s counsel referred to “ insanity” and the court interrupted and said: “There’s no insanity in this case. Please refrain from mentioning that again. They passed on that.” Thereupon, counsel terminated his summation.
As defendant argues, a finding of legal sanity should not estop him from producing evidence at the sentencing hearing that he is “medically insane”. Certainly, the pertinent subdivision of the statute (§ 1045-a) is broad enough to include such evidence: “3. In such proceeding, evidence may be presented by either party on any matter relevant to sentence including, but not limited to, the nature and circumstances of the crime, defendant’s background and history, and any aggravating or mitigating circumstances. Any relevant evidence, not legally privileged, shall be received regardless of its admissibilty under the exclusionary rules of evidence.”
Commenting on the breadth of the language in this subdivision, the Commission on Revision of the Penal Law and Criminal Code (which drafted the legislation) stated in its memorandum in support of the bill that the ‘£ aggravating ’ ’ and £ 1 mitigating ” evidence should be similar to that found in a “ presentence investigation report” (N. Y. Legis. Annual, 1963, p. 75; see People v. Dusublon, 16 N Y 2d 9, 18). Moreover, the Model Penal Code, one of the sources for the New York statute, specifies that evidence concerning the defendant’s “ mental * * * condition ” may be introduced in this proceeding and also includes under its listing of possible £ ‘ Mitigating circumstances ’ ’ the fact that the £ 1 murder was committed while the defendant was under the influence of extreme mental or emotional disturbance ” (Model Penal Code, § 201.6, subds. [2], [4], pars, [b], [g]. Compare the Pennsylvania statute limiting the evidence which can be considered at the sentencing hearing *69 to evidence which was not introduced at the first trial. Penn. Ann. Stat., tit. 18, § 4701.) See, also, People v. Rivera (16 N Y 2d 546) in which it was assumed that the jury in a section 1045-a proceeding was entitled to consider evidence introduced at the sentencing hearing on the defendant’s medical condition.
California also has a bifurcated proceeding in capital cases which is governed by a statute similar to section 1045-a and in People v. Bickley (57 Cal. 2d 788) the California Supreme Court touched on the distinction between “legal” and “medical” insanity. The defendant in BicJcley initially entered a plea of not guilty by reason of insanity and was examined by two court-appointed “ alienists ” who found him sane. Defendant then withdrew the plea and was found guilty at the first trial. The State introduced the testimony of the examining alienists at the sentencing proceeding and defendant objected on the grounds that it was “ irrelevant ” because he had abandoned his insanity plea. On appeal, the court held that the testimony was relevant: ‘ ‘ While, by withdrawing the plea of insanity after the court had already appointed the experts and they had already examined him, the appellant removed the issue of sanity from the guilt phase of the trial, because sanity then was no longer material or relevant to that phase of the trial, sanity, in the sense of mental condition, was still at issue on the penalty phase, and was obviously material and relevant on that phase of the trial. Mental condition is one of the facts relating to appellant’s ‘ background and history ’ and is a fact ‘ in aggravation or mitigation of the penalty’ as those terms are used in section 190.1” (57 Cal. 2d, supra, p. 792).
Similarly, it may have been irrelevant at the main trial in this case whether or not defendant could control his actions. But there is no reason in logic or justice why the jury could not consider such evidence as a “ mitigating ” circumstance in fixing his penalty. An entirely different issue was involved at the sentencing proceeding — not the criminal responsibility of defendant which had already been decided under the traditional and arguably archaic McNaughton rule, but whether anything concerning the “defendant’s background and history” might move the jury to extend mercy. On this issue, the conclusions of two of the psychiatrists (as supported by the defendant’s conduct and his own testimony) that defendant was suffering *70 from a grave mental illness which, rendered it impossible for him to control his bestial actions would clearly have been relevant.*
Upon remand to the trial court, there must be an automatic sentence of life imprisonment for defendant. Subdivision 6 of section 1045-a provides: “6. On an appeal by the defendant where the judgment is of death, the court of appeals, if it finds substantial error only in the sentencing proceeding, may set aside the sentence of death and remand the case to the trial court, in which event the trial court shall impose the sentence of life imprisonment.”
Accordingly, the judgment should be reversed and the matter remanded to the Supreme Court for imposition of a sentence of life imprisonment pursuant to subdivision 6 of section 1045-a of the Penal Law.
Chief Judge Fuld and Judges Vah Voorhis, Burke, Scileppi, Bergan and Keating concur.
Judgment of conviction reversed to the extent that the sentence of death is set aside and the case remanded to the Supreme Court, Queens County, for imposition of a sentence of life imprisonment, pursuant to subdivision 6 of section 1045-a of the Penal Law.

 While it is true that the jury heard this evidence at the first trial, the trial court stated at the sentencing hearing, after interrupting the summation of defense counsel, that “ There’s no insanity in this case.”